# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 08 B 22580 |
| | ) | Chapter 7 |
| GREG J. CONTOS and GEORGIA M. CONTOS, | ) | Judge John H. Squires |
| Debtors. | ) | |
| | ) | |
| WEBSTER BANK, NATIONAL ASSOCIATION, | ) | Adversary No. 08 A 00963 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREG J. CONTOS and GEORGIA M. CONTOS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the amended complaint filed by Webster Bank, National Association ("Webster Bank") against Greg J. Contos ("Mr. Contos") and Georgia M. Contos ("Mrs. Contos") (collectively the "Debtors") to determine the dischargeability of a debt under 11 U.S.C. § 523(a)(2)(B). For the reasons set forth herein, having considered all of the evidence adduced at trial, the Court finds the debt is non-dischargeable in the principal sum of $452,322.02 plus $41,438.21 in unpaid interest. Additionally, the costs incurred by Webster Bank in the sum of $1,346.69 are allowed. Webster Bank is afforded ten days to file a revised submission of its attorneys' fees incurred in the collection of the debt from the Debtors.

-2-

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## II. FACTS AND BACKGROUND

In July 2005, the Debtors supplied Webster Bank with two applications for loans to be secured by real property they owned located at 355 South Sturges Parkway, Elmhurst, Illinois. (Webster Bank Ex. Nos. 1 & 2.) One application was for a first mortgage in the amount of $625,000 and the other application was for a junior mortgage securing a home equity credit line in the amount of $455,000. (*Id.*) The Debtors signed the loan application for the first mortgage, but they did not sign the loan application for the junior mortgage. (*Id.*) Both loans were brokered by Capital Mortgage Company. Mr. Contos was the owner and president of Capital Mortgage Company. On the applications, the Debtors indicated that Mr. Contos's base employment income was $23,500 per month. (*Id.*) A monthly income of $23,500 is equivalent to $282,000 per year. Pursuant to the Debtors' subsequently prepared income tax return for 2005, their annual income from Mr. Contos's employment at the time they made the loan applications was $28,663. (Webster Bank Ex. No. 8.) Moreover, the Debtors claimed a loss of $8,944 on their 2005 income tax return. (*Id.*) The year preceding the loan applications, the Debtors reported on their 2004 federal income tax return $48,000 as annual income from Mr. Contos's employment, plus other income of over $120,000. (Webster Bank Ex. No. 7.)

-3-

On September 9, 2005, both loans were closed. As a result, the Debtors and Webster Bank entered into the home equity consumer revolving loan agreement in the sum of $455,000 (the "HELOC Note"), and an open-end junior mortgage. (Webster Bank Ex. Nos. 3 & 4.) On that same date, the Debtors signed an adjustable rate note in the sum of $625,000 and the first mortgage. (Webster Bank Ex. Nos. 5 & 6.) The first mortgage loan was subsequently sold by Webster Bank to another party and is not the subject of this adversary proceeding. The Debtors began to make monthly payments of principal and interest pursuant to the HELOC Note, but defaulted on those payments on January 25, 2008. (Joint Pretrial Statement at p. 2.)

Pursuant to the HELOC Note, if a payment is not made on the date it is due, the Debtors will be considered in default. (Webster Bank Ex. No. 3 ¶ 10.) Further, under the terms of the HELOC Note, Webster Bank is entitled to collect its costs and attorneys' fees. (*Id.* ¶ 11.) Webster Bank submitted its attorneys' fees and costs incurred from June 1, 2008 through August 31, 2009 in the sums of $21,575.00 and $1,346.69, respectively. (Webster Bank Ex. No. 9.)

On August 27, 2008, the Debtors filed a voluntary Chapter 7 bankruptcy petition. (Webster Bank Ex. No. 10.) On their Schedule B, the Debtors listed total personal property of $21,581. (*Id.*) On September 24, 2008, at the first meeting of creditors pursuant to 11 U.S.C. § 341, Mr. Contos testified that the $100,000 figure listed on one of the loan applications as the value of the Debtors' personal property in 2005 was not accurate. (Webster Bank Ex. No. 14 at pp. 15-17.)

-4-

Webster Bank filed the instant adversary proceeding against the Debtors on November 21, 2008. Proper service was made on both Debtors. The Debtors have not filed an answer to the amended compliant. Only Mr. Contos has appeared pro se to defend himself. In its amended complaint, Webster Bank alleges that the Debtors procured the $455,000 loan with an intent to deceive by using materially false written loan applications respecting their financial condition, on which Webster Bank reasonably relied. Webster Bank seeks a determination that the unpaid principal in the sum of $452,322.02, plus interest of $41,438.21 and attorneys' fees and costs in the sums of $21,575 and $1,346.69, respectively, are non-dischargeable under 11 U.S.C. § 523(a)(2)(B).

On October 16, 2009, the Court held an evidentiary hearing in this matter. Webster Bank moved for a judgment on partial findings pursuant to Federal Rule of Civil Procedure 52 and its bankruptcy analog Federal Rule of Bankruptcy Procedure 7052 against Mrs. Contos for her failure to answer or otherwise respond to the amended complaint. Pursuant to Bankruptcy Rule 7052(c), the Court reserved ruling on the motion until the close of all the evidence. Thereafter, the Court took this matter under advisement. For reasons as will be detailed herein, the Court grants Webster Bank's motion for default against Mrs. Contos because it demonstrated by a preponderance of the evidence that the Debtors, with the intent to deceive, obtained money from Webster Bank by using materially false written loan applications respecting their financial condition, on which Webster Bank reasonably relied.

At the trial, only one witness testified. Teresa Grant ("Ms. Grant"), senior vice president of Webster Bank, testified that she has been with Webster Bank for approximately three years. According to Ms. Grant, while she was not at Webster Bank when the loans

-5-

were made to the Debtors in 2005, she reviewed Webster Bank's file and documents relating

to the loans, and determined that Webster Bank made both loans in accordance with its

ordinary loan procedures and loan underwriting policies. Ms. Grant testified that Webster

Bank obtained the following financial information regarding the Debtors: a credit report,

bank statements, their 2004 federal income tax return, and other documents, including an

appraisal of the Debtor's real property and verification of Mr. Contos's employment as well

as verification of the liquid securities owned by the Debtors.

According to Ms. Grant, the main criterion that Webster Bank viewed crucial to

making the loans was the debt to income ratio of the Debtors. In order to obtain the loans

from Webster Bank, the Debtors needed a debt to income ratio of forty-five percent or less.

Ms. Grant testified that her review of the file indicated that the Debtors' debt to income ratio

was forty-four percent. On that basis, as well as the other documents that Webster Bank

obtained, including both loan applications, Ms. Grant testified that Webster Bank approved

the loans to the Debtors. Ms. Grant also testified that Mr. Contos's firm, Capital Mortgage

Company, had brokered approximately thirty-seven other loans through Webster Bank and

that there were no problems with any of these loans.

### III. APPLICABLE STANDARDS

#### A.    Exceptions to the Discharge of a Debt

The discharge provided by the Bankruptcy Code is meant to effectuate the "fresh

start" goal of bankruptcy relief. *Vill. of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir.

2002). The party seeking to establish an exception to the discharge of a debt bears the

-6-

burden of proof.  *Goldberg Secs., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th

Cir. 1992); *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 957 (Bankr. N.D. Ill.

1995).  The burden of proof required to establish an exception to the discharge of a debt is

a preponderance of the evidence.  *Grogan v. Garner,* 498 U.S. 279, 291 (1991); *In re*

*McFarland*, 84 F.3d 943, 946 (7th Cir. 1996); *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir.

1994).  Exceptions to the discharge of a debt are to be construed strictly against a creditor

and liberally in favor of a debtor.  *In re Morris*, 223 F.3d 548, 552 (7th Cir. 2000); *Kolodziej*

*v. Reines (In re Reines)*, 142 F.3d 970, 972-73 (7th Cir. 1998); *In re Zarzynski*, 771 F.2d 304,

306 (7th Cir. 1985).  "The statute [11 U.S.C. § 523] is narrowly construed so as not to

undermine the Code's purpose of giving the honest but unfortunate debtor a fresh start."

*Park Nat'l Bank & Trust of Chi. v. Paul (In re Paul)*, 266 B.R. 686, 693 (Bankr. N.D. Ill.

2001).

### B.      11 U.S.C. § 523(a)(2)(B)

Section 523 of the Bankruptcy Code enumerates specific, limited exceptions to the

dischargeability of debts.  Section 523(a)(2)(B) provides as follows:

> (a) A discharge under section 727 . . . does not discharge an
> individual debtor from any debt–
>> (2) for money, property, services, or an
>> extension, renewal, or refinancing of credit, to
>> the extent obtained by–
>>> (B) use of a statement in
>>> writing–
>>> (i) that is materially false;
>>> (ii) respecting the debtor's or
>>> an insider's financial
>>> condition;
>>> (iii) on which the creditor to
>>> whom the debtor is liable for

-7-

> such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive[.]

11 U.S.C. § 523(a)(2)(B).

To prevail on a complaint under § 523(a)(2)(B), a creditor must prove five elements: (1) the debtor made a statement in writing; (2) the statement was materially false; (3) the statement concerned the debtor's financial condition; (4) in making the statement, the debtor had an intent to deceive the creditor; and (5) the creditor actually and reasonably relied upon the statement. *Fischer Inv. Capital, Inc. v. Cohen (In re Cohen)*, 507 F.3d 610, 613 (7th Cir. 2007); *In re Sheridan*, 57 F.3d 627, 633 (7th Cir. 1995). "[T]he creditor bears the burden to demonstrate by a preponderance of the evidence that the exception applies." *Cohen*, 507 F.3d at 613.

## IV. DISCUSSION

### A.     Whether the Debtors Made Statements in Writing

It is undisputed that the Debtors made statements in writing when they submitted the two loan applications to Webster Bank. The fact that the second application was unsigned is not fatal as the testimony was undisputed that Webster Bank considered both applications in connection with the loans it made. The second loan application was submitted by Mr. Contos's firm, Capital Mortgage Company, which he controlled. Hence, Webster Bank has demonstrated this first element.

-8-

**B.     Whether the Statements Were Materially False**

Next, Webster Bank must show that the statements were materially false. Material falsity is "an important or substantial untruth." *In re Bogstad*, 779 F.2d 370, 375 (7th Cir. 1985). There are two tests for determining whether a statement is materially false. *Bryson*, 187 B.R. at 962. Under the first test, known as the "substantial untruth" test, a statement is materially false if it "paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *Id.* (internal quotation omitted). An alternative test to determine "materiality" is the "but for" test. *Id.* The "but for" test requires a creditor to prove that "but for" the material misrepresentations, he would not have extended money, property, services, or credit. *Id.*; *Westbank v. Grossman (In re Grossman)*, 174 B.R. 972, 984 (Bankr. N.D. Ill. 1994). The Seventh Circuit has noted that the *causa sine qua non*, or "but for" test is a "recurring guidepost" for determining material falsity. *Selfreliance Fed. Credit Union v. Harasymiw (In re Harasymiw)*, 895 F.2d 1170, 1172 (7th Cir. 1990); *Bogstad*, 779 F.2d at 375. However, the Seventh Circuit has not decided whether satisfaction of the "but for" test is an essential part of a claim under § 523(a)(2)(B). *Harasymiw*, 895 F.2d at 1172. While the inquiry into material falsity will often focus on the content of particular factual assertions made by a debtor, "writings with pertinent omissions may [also] qualify as materially false for purposes of § 523(a)(2)(B)." *Cmty. Bank of Homewood-Flossmoor v. Bailey (In re Bailey)*, 145 B.R. 919, 930 (Bankr. N.D. Ill. 1992).

In this matter, the Court finds that Webster Bank has demonstrated material falsity by a preponderance of the evidence under either test. First, the Debtors indicated in the loan

-9-

applications that Mr. Contos earned monthly income of $23,500. (Webster Bank Ex. Nos. 1 & 2.) A monthly income of $23,500 is equivalent to $282,000 per year. The subsequently received documentary evidence revealed, however, that the Debtors' annual income for 2005 from Mr. Contos's employment totaled $28,663. (Webster Bank Ex. No. 8.) Moreover, the Debtors' claimed a loss of $8,944 on their 2005 income tax return. (*Id.*) Webster Bank established that during the time period when the Debtors executed the loan applications, the Debtors did not have monthly income of $23,500. Rather, their income was significantly less than what they reported in the loan applications. Indeed, the Debtors earned in one year only slightly more than they represented they earned in one month. Thus, the Court finds that the statements regarding the Debtors' income in the loan applications were materially false.

Further, the Debtors indicated on one of the loan applications that they owned personal property worth $100,000. (Webster Bank Ex. No. 1.) In fact, however, at the time of the filing of the bankruptcy petition on August 27, 2008, the Debtors listed the total value of their personal property at $21,581. (Webster Bank Ex. No. 10.) Mr. Contos testified at the § 341 meeting of creditors that the $100,000 figure on the loan application was not accurate. (Webster Bank Ex. No. 14 at pp. 15-17.) Hence, because Mr. Contos testified that he did not own personal property worth $100,000 at the time of the loan applications in July of 2005, the Court finds that this representation made in the first loan application was also materially false.

Ms. Grant testified that Webster Bank made the loans to the Debtors based on their debt to income ratio of forty-four percent. She further testified that Webster Bankr required a debt to income ratio of no higher than forty-five percent in order for it to make a loan.

-10-

Webster Bank loaned the Debtors money based on this figure. Ms. Grant stated that had the Debtors scored over forty-five percent, Webster Bank would not have made the loans to them.

In sum, the Debtors' actions in furnishing the inaccurate and false loan applications to Webster Bank painted a substantially untrue picture regarding their assets and current income. Further, based on the testimony of Ms. Grant, Webster Bank demonstrated that but for the material misrepresentations made by the Debtors, Webster Bank would not have made the loans to the Debtors. Consequently, Webster Bank has demonstrated that the loan applications were materially false.

**C.    Whether the Statements Concerned the Debtors' Financial Condition**

In order to satisfy the statement respecting the debtor's financial condition element, the statement must do more than prompt speculation about the debtor's finances. *Bednarsz v. Brzakala (In re Brzakala)*, 305 B.R. 705, 709 (Bankr. N.D. Ill. 2004). The statement must be "'sufficient to determine financial responsibility.'" *Id. (quoting Old Kent Bank-Chi. v. Price (In re Price)*, 123 B.R. 42, 45 (Bankr. N.D. Ill. 1991)). It is undisputed that the loan applications, which contained information regarding the Debtors' income, assets, and liabilities concerned the Debtors' financial condition. (Webster Bank Ex. Nos. 1 & 2.) Consequently, Webster Bank has demonstrated this element.

**D.    Whether the Debtors Intended to Deceive Webster Bank**

Next, Webster Bank must demonstrate that the Debtors intended to deceive it when they submitted the false financial statements. A creditor can establish an intent to deceive through direct evidence, or such intent can be logically inferred from a false representation

-11-

that the debtor knows or should know will induce another to make a loan. *Sheridan*, 57 F.3d

at 633. A debtor's intent to deceive may also be demonstrated by showing reckless

indifference to, or reckless disregard for, the accuracy of the information in a financial

statement. *Phillips v. Napier (In re Napier)*, 205 B.R. 900, 907 (Bankr. N.D. Ill. 1997).

Whether to infer the requisite intent to deceive is left to the bankruptcy court that presides

over the trial. *Sheridan*, 57 F.3d at 634.

The Court finds that the Debtors intended to deceive Webster Bank when they

submitted their loan applications. At a minimum, the Court finds that the Debtors acted with

a reckless disregard for the accuracy of the loan applications. The Debtors affirmatively

stated on the July 2005 loan applications that Mr. Contos's income was $23,500 per month.

(Webster Bank Ex. Nos. 1 & 2.) Based on the Debtors' 2005 federal income tax return,

however, that amount was clearly false and substantially greater than that represented on their

income tax return. The Debtors reported wages of only $28,663 for 2005, and reported a loss

of $8,944. (Webster Bank Ex. No. 8.) Further, the Debtors indicated on one of the loan

applications that they owned personal property valued at $100,000. (Webster Bank Ex. No.

1.) Based on their Schedule B filed with their bankruptcy petition and Mr. Contos's

testimony at the § 341 creditors' meeting, the Debtors did not have personal property worth

$100,000 at the time of the loan applications in July of 2005. (Webster Bank Ex. Nos. 10

& 14 at pp. 15-17.)

The Court finds that Mr. Contos, the owner and president of Capital Mortgage

Company, was an experienced mortgage broker, and knew or should have known the

importance of the accuracy of the information contained in the loan applications. Moreover,

-12-

his firm had brokered over thirty prior loans made by Webster Bank to other customers. An intent to deceive will be found where the debtor, an experienced businessman, knows that his financial statement inaccurately reflected assets that he did not own. *Jaress Truck Ctrs., Inc. v. Hodges (In re Hodges)*, 116 B.R. 558, 562 (Bankr. N.D. Ohio 1990).

Based on the evidence adduced at trial, the Court infers an intent to deceive on the part of the Debtors when they intentionally misrepresented their income and the value of their personal property on the loan applications. Thus, Webster Bank has demonstrated by a preponderance of the evidence that the Debtors intended to deceive it.

### E.    Whether Webster Bank Actually and Reasonably Relied Upon the Statements

Finally, Webster Bank must demonstrate that it actually and reasonably relied upon the statements. The reasonableness of a creditor's reliance should be determined on a case by case basis. *In re Bonnett*, 895 F.2d 1155, 1157 (7th Cir. 1990). Courts should not "undertake a subjective evaluation and judgment of a creditor's lending policy and practices." *N. Trust Co. v. Garman (In re Garman)*, 643 F.2d 1252, 1256 (7th Cir. 1980). Indeed, courts should not use the reasonable reliance requirement to second-guess a creditor's decision to lend money. *Morris*, 223 F.3d at 553.

Generally, creditors are not required to conduct an investigation before entering into agreements with prospective debtors. *Id.* at 554. A creditor need not "view each representation with incredulity requiring verification." *Garman*, 643 F.2d at 1260. Although investigation is generally not required, "such a precaution could be the ordinarily prudent choice in circumstances where the creditor admits that it does not believe the representations

-13-

made by the prospective debtor." *Morris*, 223 F.3d at 554. Reliance may not be reasonable

if a lender "possesses information sufficient to call the representation into question. . . ."

*Mayer v. Spanel Int'l Ltd.*, 51 F.3d 671, 676 (7th Cir. 1995). The requirement of reasonable

reliance does not mean that a creditor can bury its head in the sand like an ostrich and ignore

facts that are readily available to it. *Bogstad*, 779 F.3d at 373 n.4.

      In evaluating whether a creditor's reliance was reasonable, the following factors may

be considered: (1) the creditor's standard practices in evaluating credit-worthiness (absent

other factors, there is reasonable reliance where the creditor follows its normal business

practices); (2) the standards or customs of the creditor's industry in evaluating credit-

worthiness (what is considered a commercially reasonable investigation of the information

supplied by the debtor); and (3) the surrounding circumstances existing at the time of the

debtor's application for credit (whether there existed a "red flag" that would have alerted an

ordinarily prudent lender to the possibility that the information is inaccurate, whether there

existed previous business dealings that gave rise to a relationship of trust, or whether even

minimal investigation would have revealed the inaccuracy of the debtor's representations).

*Colchester State Bank v. Phillips (In re Phillips)*, 367 B.R. 637, 645 (Bankr. C.D. Ill. 2007).

      With respect to the first factor, Ms. Grant testified that based on her review of the

loan file, Webster Bank's standard practices in evaluating credit-worthiness were followed.

There was no evidence adduced regarding the second factor–the standards or customs of the

banking industry in evaluating credit-worthiness. As for the third factor, the potential "red

flag" of the materially lower income on the Debtors' 2004 income tax return from the

monthly amount listed in both loan applications is weighed in the balance along with the

-14-

apparently satisfactory credit report, the Debtors' bank statements, and other documentation received by Webster Bank.

The Court finds that Webster Bank has shown by a preponderance of the evidence that it actually and reasonably relied upon the false statements made by the Debtors. Actual reliance is shown by the closing of both loans. Webster Bank demonstrated reasonable reliance by showing that it followed its normal business practices and conducted sufficient due diligence before the loans were made. Webster Bank ran a credit report on the Debtors and procured a copy of their 2004 federal income tax return as well as the other documentation. Ms. Grant testified that Webster Bank actually and critically relied on the Debtors' representations in the loan applications that Mr. Contos's monthly income from employment was $23,500.

Ms. Grant further testified that Mr. Contos, through his company, had brokered approximately thirty-seven mortgage loans with Webster Bank and that there had never been a problem with any of those loans. This last factor is critical in Webster Bank's favor because is shows a prior satisfactory course of dealing between Mr. Contos and Webster Bank that allowed it to be lulled into a false sense of security in relying on the Debtors' representations that their income was substantially increased in 2005 over that earned in 2004. When a debtor and a creditor have an ongoing relationship that gives rise to a relationship of trust, a creditor's reliance may be deemed reasonable without additional verification. *Phillips*, 367 B.R. at 645 (*citing Bogstad*).

Webster Bank was reasonably entitled to rely upon the financial information provided by the Debtors because it had no reason to suspect that the Debtors were providing false

Case 08-00963   Doc 64   Filed 10/29/09   Entered 10/29/09 14:19:44   Desc Main
Document      Page 15 of 17

-15-

information.  Although the income on the loan applications was significantly higher than in the 2004 tax return, there is nothing in the record to indicate that Webster Bank should have done more than follow its usual practice of reviewing the credit report and bank statements submitted by the Debtors.  In short, there were no "red flags" that would have alerted Webster Bank to the possibility that some of the information provided in the loan applications was inaccurate.  Hence, Webster Bank has demonstrated this element by a preponderance of the evidence.

Pursuant to the terms of the HELOC Note, Webster Bank is entitled to its attorneys' fees and costs.  (Webster Bank Ex. No. 3 ¶ 11.)  Webster Bank submitted its attorneys' fees and costs incurred from June 1, 2008 through August 31, 2009 in the sums of $21,575.00 and $1,346.69, respectively.  (Webster Bank Ex. No. 9.)  The expenses have been adequately detailed and will be allowed as requested.  The attorneys' fees, however, have not been properly documented in order for the Court to review the services rendered.  The exhibit lists the time spent by Webster Bank's attorneys, but does not reflect the services provided because they have been redacted to preserve the attorney-client privilege.  While the Court understands why the details regarding the services provided were redacted, the current submission makes it impossible for the Court to review the services and determine the reasonableness and necessity of the work performed.  As a result, the Court affords Webster Bank ten days to file a revised, detailed submission of the attorneys' fees it incurred in the collection of the debt from the Debtors.

For the foregoing reasons, the Court finds the debt owed by the Debtors to Webster Bank is non-dischargeable under § 523(a)(2)(B) in the principal sum of $452,322.02 plus

-16-

$41,438.21 in unpaid interest.  Additionally, the costs incurred by Webster Bank in the sum

of $1,346.69 are allowed.  Webster Bank is afforded ten days to file a revised submission of

its attorneys' fees incurred in the collection of the debt from the Debtors.


## V. <u>CONCLUSION</u>

For the foregoing reasons, the Court finds that the debt owed by the Debtors to

Webster Bank is non-dischargeable under § 523(a)(2)(B) in the principal sum of $452,322.02

plus $41,438.21 in unpaid interest.  Additionally, the costs incurred by Webster Bank in the

sum of $1,346.69 are allowed.  Webster Bank is afforded ten days to file a revised

submission of its attorneys' fees incurred in the collection of the debt from the Debtors.

This Opinion constitutes the Court's findings of fact and conclusions of law in

accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate order shall be

entered pursuant to Federal Rule of Bankruptcy Procedure 9021.


**ENTERED:**


DATE: _____10/29/09_____     _____

John H. Squires
United States Bankruptcy Judge


cc:      See attached Service List

## SERVICE LIST

### Webster Bank, National Assocation v. Greg and Georgia Contos
**Adversary No.  08 A 00963**

Daniel Lynch, Esq.
Amy J. Hansen, Esq.
Lynch & Stern LLP
150 S. Wacker Drive, Suite 2600
Chicago, IL 60606

Greg and Georgia Contos
355 Sturges Parkway
Elmhurst, IL 60126

Brenda Porter Helms, Esq.
c/o Albany Bank & Trust
3400 W. Lawrence Avenue
Chicago, IL 60625

William T. Neary, United States Trustee
219 S. Dearborn Street
Suite 873
Chicago, IL 60604